## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3336

In the Matter of:

ALTHEIMER & GRAY,

*Debtor.*

Appeal of:

MARK H. BERENS,

*Movant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 4999—**Charles R. Norgle**, *Judge*.

ARGUED APRIL 1, 2010—DECIDED APRIL 15, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  At the height of its pros-
perity, Altheimer & Gray, a law firm founded 1914 in
Chicago, had offices in 11 cities: Bratislava, Bucharest,
Chicago, Istanbul, Kiev, London, Prague, San Francisco,
Shanghai, Springfield, and Warsaw. But in 2003 it entered
involuntary bankruptcy after it failed to pay its landlord

and other creditors. The firm's creditors approved a liquidation under which debts to its partners would be subordinated to debts owed to other creditors. (This was technically a plan of reorganization under Chapter 11 of the Bankruptcy Code of 1978; the winding up of a business is one form of reorganization.) The bankruptcy court confirmed this plan in 2005; no one appealed.

In 2004 Mark Berens had filed a claim to some of the estate's assets. Berens, whose submission described him as a "non-unit partner," contended that the law firm owed him about $311,000 when it went belly up: $73,000 for capital contributions he had made, $154,000 for unpaid compensation, $75,000 for distributions wrongfully withheld, and $9,000 for unreimbursed expenses. No one objected to his proof of claim. But neither did the trustee pay it, because the estate never collected enough from the law firm's former clients to reimburse its other creditors fully. In 2008 Berens filed a motion asking Bankruptcy Judge Doyle to instruct the trustee to pay his claim. She denied this motion, and the district court affirmed. 2009 U.S. Dist. LEXIS 75488 (N.D. Ill. Aug. 21, 2009). Both judges concluded that Berens was a "partner" of Altheimer & Gray, as the plan of reorganization uses that word, and therefore is not entitled to any distribution from the estate.

One of Berens's arguments in this court is that, because no one objected to his claim, it was allowed and must be paid. That is half right. Because no one objected, the claim was allowed. 11 U.S.C. §502(a). But an allowed claim is *paid* only if it has a high enough priority. Allow-

ance has nothing to do with priority. And the plan of reorganization subordinates partners' claim to those of other creditors. It is too late to change the plan's terms. See 11 U.S.C. §1141(a); *United Student Aid Funds, Inc. v. Espinosa*, No. 08-1134 (U.S. Mar. 23, 2010); *In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir. 1994). So the only real question is whether in 2003 Berens was a "partner" of Altheimer & Gray.

He says not, because in 1999 he signed a contract under which he was not entitled to any of the firm's profits. Until 1999 he had been a partner by the definition in the Uniform Partnership Act, which Illinois has enacted: his name was on the firm's articles of partnership, he voted in its internal deliberations, he invested capital in the business, and his compensation was derived from its profits. See 805 ILCS 206/401. He was personally liable for all of the firm's debts. 805 ILCS 206/306. But the 1999 contract changed all of that. Berens gave up his entitlement to any of the profits and a role in decision-making. He withdrew from the partnership agreement. The firm promised to repay his capital contribution. Berens and the firm agreed that he would receive a salary and could continue in his new post if he billed at least 1,000 hours and collected at least $1 million a year in fees from clients for which he was responsible. Berens's new position would not have been called "partner" under the Uniform Partnership Act. And it follows, Berens contends, that he was not a "partner" for the purpose of the plan of reorganization either.

This argument supposes that the plan and the statute use the word "partner" in the same way. Yet the plan does not incorporate or refer to the Act's definition. Nor does the plan specify other potential rules for distinguishing partners from employees. See *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002) (discussing the possibility that federal employment-discrimination laws draw that line differently from the way the Uniform Partnership Act does). To the contrary, the plan employs two phrases that do not appear in the Uniform Partnership Act: "unit partner" and "non-unit partner." These extra-statutory phrases reflect the practice at Altheimer & Gray, and many other law firms, of calling certain salaried employees "partners" as an honorific. At Altheimer & Gray any person who stood to receive a share of the firm's profits was said to have "units" in the partnership; senior lawyers who lacked an interest in the profits were called "non-unit partners" or "contract partners". This enabled them to describe themselves to clients and lawyers outside the firm as "partners."

Berens's 1999 contract with Altheimer & Gray followed this form. The contract begins: "Mark Berens (Partner) and Altheimer & Gray (the 'Firm') agree that Partner will be employed as a contract partner of the Firm" for a term of years. The agreement contemplated that Berens might receive units as a bonus. Its compensation clause concludes with the sentence: "Partner may or may not be given units." That never happened, so Berens was following the firm's usage when his 2004 claim in the bankruptcy described his status as "non-unit partner."

The plan of reorganization defines the firm's partners to include both "Unit Partners" and "Non-Unit Partners." That definition follows the law firm's norm, not the Uniform Partnership Act's. The bankruptcy judge and district judge classified Berens as a non-unit partner under the plan—and, since his own claim applied that label to himself, he is hardly in a position to complain. His argument that he was not a partner under the Uniform Partnership Act, and therefore cannot have been a "non-unit partner" under the plan, is a non-sequitur.

No rule of bankruptcy law (or any other law) requires a plan of reorganization to define terms in the same way as any particular statute. Suppose that the plan had provided that borogroves stand in line behind all other creditors, then defined "borogrove" as "anyone called a 'unit partner' or 'non-unit partner' in the debtor's ordinary operations." Neither Berens nor anyone else could complain that the word "borogrove" can't be found in dictionaries, that it comes from a nonsense poem (Lewis Carroll's "Jabberwocky"), that unlike "chortle" (another of Carroll's invented words) it never caught on in English, or that it means something different from the word "partner" in the Uniform Partnership Act.

Just so with the plan's actual definition. It uses words as Altheimer & Gray did, not as the Uniform Partnership Act does—and this choice makes perfect sense because it provides clarity and simplicity to people who were affiliated with that firm or did business with it. Why design an elaborate definitional

clause, or list the subordinated claims one by one, when Altheimer & Gray already had phrases that could be plugged into the plan? When Berens called himself a "non-unit partner," he signaled that he was not competing with any outside creditor for the estate's assets. Small wonder no one objected.

                                        AFFIRMED